D. Xavier Wilkins, also known as Xavier Wilkins, also known as Chosen Wilkins, appellate. Mr. Smith for the accountant, Ms. Carroll for the appellate. May it please the court, my name is Greg Smith and I'm the appointed counsel for Dustin Wilkins in this appeal. I ask you to remand this case for further proceedings and especially a prejudice determination of whether new sentencing is warranted under 2255 with a reevaluation of the restitution amounts. Just as importantly, I also want to make a special request that you decide this appeal quickly. Please don't wait to issue a decision until your formal opinion is written because if your decision is delayed, any hopes we have for relief will surely become moot. Since my client's sentence is scheduled to expire August 20th, and with good times, it may even be sooner. In my client's 2255 petitions, he asserted ineffective... Do you know what time he's scheduled for release now? I'm sorry? Do you have something more concrete on time yet or not? Nothing more concrete than that. I could perhaps supplement to the court, but that is what his scheduled release date is, and I think with good time, it may even be sooner than that. So we do request a prompt decision if possible. In my client's 2255 petition, he asserted ineffective assistance and challenged both his plea and his sentence. I want to focus today on our key point. Mr. Wilkins deserves a new sentencing hearing. His best argument for a below-guideline sentence, double punishment, was never raised by his lawyers, and it should have been, as his own first lawyer admitted. Miles planned to raise it, but Mr. Miles was replaced before he did, and then Mr. Wilkins' second lawyer, Mr. Carroll, then never raised it. So the bottom line is Judge Bates was never told that the 33-month sentence he was giving equated to a 64-month sentence, far above what the guidelines call for when this scheme is considered as a whole. The plea agreement prevented that argument from being raised in its most natural and forceful and direct way, which was under 5K2.23. Yes, Your Honor. Right? That's true. So all that was left at that point would have been a very amorphous, open-ended argument about what sentence is sufficient but not greater than necessary to achieve the purposes of sentencing under 3553. Well, two points, Your Honor. First is that we also believe that a carve-out should have been sought to allow for the departure, which you're correct, is more formalized in the guidelines, but the statute allows for a variance as well. And look, at this point we're not talking about a 31-month reduction. We're down to, what, six months before he gets out or less? We're just – you're correct. I mean, I'm not sure I agree with the concept of amorphous, but it certainly doesn't necessarily equate like perhaps the departure would to a 31-month reduction, but some below-guideline sentence should have been sought and was never sought by analogy to 5K2.23. I mean, I guess what I'm suggesting is to the extent your claim has force, it may be more in taking the 5K argument off the table than in not making the water down 3553 argument. Well, we have argued both, and I take your point that one argument may be stronger than another, but the bottom line is the judge never got the argument, and it was the best argument that should have been made. And as a judge, and you as a court, you ought to want these arguments to be brought to the court. The court's statutory charge is to impose a sentence sufficient but not greater than necessary. If a sentence is greater than necessary, the court ought to be told all the reasons why, and that didn't occur here. Well, isn't even just to back it up before the sentencing hearing, the agreement specifically allows for the criminal history factor to change based on subsequent information between the signing of the plea and the sentencing hearing, and in particular obviously allows for a reduction in the criminal history guidelines if the probation office determines that there are fewer points than were estimated in the plea. And my understanding here is that Mr. Carroll didn't press this issue with the probation office, or he simply just sort of went along. So you talk about how he just sort of phoned, maybe literally just phoned it in when it came to dealing with the probation office. There's nothing in the plea agreement that would have prohibited him from persuading the probation office that his criminal history category should have been lower, is there? No, Your Honor. It specifically allows for that, correct? It could not be. I think that the plea agreement said that it couldn't be challenged once the determination was made. Yeah, but the probation office. But he could have raised it with probation. Right, and they were certainly entitled to come in with a lower criminal history. Correct. And Mr. Carroll spoke to probation office here but didn't press this point with them at all is my understanding. Right. He made clear he wasn't even sure he discussed 5K2.23 with the probation office. So is that an aspect of the ineffective assistance, or you just focused on the sentencing hearing? Your brief sounded like it was talking about that he was not responsible in how he dealt with the probation office, but I just want to be clear on that. I think that that's a fair point, and I think that's something he should have done, Your Honor, yes. Wait, you think which is a fair point, the part about what's in your brief or the part about what should have been done? I'm sorry, say again? You said you think that's a fair point, and were you talking about the point about what was in your brief or the point about what should have been done? I think both, Your Honor. I think we argued that Mr. Carroll didn't press the issues he should have pressed sufficiently, and I think that's what we raised in our brief, and I think that's what I'm arguing. Including the point about the probation office? I think we talked about his interactions with the probation office in the brief, yes, Your Honor. The argument that you say should have been made has a real two-edged sword to it. On your side is the point that he's already served a bunch of time for a related offense, but on the other hand, the government could easily spin the same points to emphasize that the defendant had a pattern of a lot of different offenses with a lot of different victims rather than just one larger fraud, and on top of that, that the defendant went back to his criminal ways right after he had the strong medicine of a two-and-a-half-year sentence. Yes, Your Honor. So that seems like the kind of judgment where reasonable lawyers might come out either way. Well, Your Honor, I hear what you're saying, but that's not what Mr. Carroll said. He said that he never researched 5K2.23, never talked to the probation office about it, and that if this decision is made after the client signs off on it, maybe it's a different issue. But the problem that I see here is that Judge Bates never was – this was never presented to Judge Bates as a below-guidelines issue. The prosecutor raised exactly what you said at the sentencing in terms of where within the range, and he came down saying it's more of a mitigator than an aggravator. He said that's why you can give the low-end judge. And he expressed what you're saying, which is it can cut both ways. But the bottom line, the serious bottom line, is that the judge was never told this is a below-guidelines issue. He was only told by the prosecutor, never by the defense lawyer, that it was a within-guidelines issue, and it wasn't. 5K2.23 says it's a below-guidelines issue, and it should be. And the bottom line is this judge didn't know that, and that's, I think, why Judge Bates never found there's no prejudice here. The government asked him to find that below. Look, if we go back on remand and he evaluates prejudice and says, you know, this wouldn't have made a difference to me, no prejudice, then fine, okay. But Judge Bates ought to be able to see that as a below-guidelines issue, which he never did because the defense lawyer never brought it to him. And he ought to be able, if he wants to, if he thinks it's justified, to be able to count it as a mitigator, to give a below-guidelines sentence, and basically to give the sentence he would have got given if he had heard it, if he had known it at the original sentencing. That's all we're asking, that you go back to him and that he be able, if he believes it's prejudicial, to be able to say, you know, if I'd known this then, I would have given this sentence. And so now that I know it, this is the sentence I'm going to give. I have a question about this much topics for a second. Just on that point, just one more. Suppose I conclude that just as a matter of substantive litigation tactics, the decision to, in counsel's words, argue with a light touch was a reasonable one. Would the fact that he didn't do independent research and he didn't talk to the client and such, would that be a basis for finding deficiency under prong one of Strickland? I thought those might be relevant considerations, but it's ultimately an objective standard, and if what the lawyer does is within the bounds of reasonableness, we don't second guess. I think it does because we're talking about the assistance counsel. It's supposed to be the client's call, not the attorney's call. And what happened here is he decided for himself. He never raised it with his client. The client never signed off, and there's a reason for that, especially when you're talking about here, the best issue he had got abandoned without his knowledge or even any discussion about it. So, yes, I don't think that the lawyer in that case can hide the best argument under a bushel just because he happens to personally believe that his client's already getting a good sentence. Can I ask you a question about something that is not apparently the best issue they had, but I just have just a clarification, which is your argument as to restitution. It's framed in the opening brief, I thought, largely as a claim of ineffective assistance of counsel. But are you also making a straight-up claim on 2255, which I just don't know whether there's the cause to do that, but you're making the argument straight up on 2255 that the error and alleged error with respect to restitution itself is something that can be remedied at this stage? I think it's both, but, yes, we are raising a challenge to the restitution, separate and apart from ineffectiveness, because I think it's just factually wrong. I think, based on this Court's oversight, you ought not to have a clearly wrong decision on restitution because it hurts the other victims. They don't get as much under the— And that's something that you think can come up on 2255. We raised it. I take your point, but I also do think it's ineffectiveness because none of the lawyers focused on pieces of paper saying that this was not a loss incurred. So I think it's also ineffectiveness, clearly ineffectiveness. I think there was deficient performance in not picking up on statements saying a victim got paid. I mean, that's a straight black and white ineffectiveness deficiency, as I can see. You just didn't pick up on the fact that the victim got paid, and then you allowed restitution. So I think it's deficient, and I have no doubt on the prejudice prong. Judge Bates, if he'd been told that, would have changed it. Again, he certainly didn't find that he wouldn't have. He never addressed the issue at all, so it ought to be romantic. I have one other question. If I miss this in the briefs, I apologize, but there's lots of talk about what would have, you know, the consequence of choosing between pleading and going to trial, but I didn't see an explanation as to what his sentence he was facing if he had gone to trial and just assumed he'd been convicted on all counts. Don't we need to know that? That issue, I don't know that was specified below, Your Honor. I mean, he testified he thought he'd get the statutory maximum. The court below found that was not a credible, I mean, they did not credit his testimony. Judge Bates did not find Mr. Wilkins to be a credible witness. No, no, I'm just asking did the lawyers ever figure out what sentence he was facing if he rejected the plea? Usually that's a sort of comparison that we know between the plea agreement and what they were facing. I don't believe there's anything in the record. I mean, I suppose there could have been some adjustments on the, I don't think that issue was ever addressed below, Your Honor. If I might reserve, thank you. Thank you, counsel. Good morning, Your Honors. May it please the Court. Can you tell me what he was facing if he'd gone to trial and been convicted? Every case I've ever had on this, they go, well, he was given this plea of X months, and had he gone to trial, he'd have faced a lot more. That issue was not addressed in the trial court and district court, and it would be a guess on my part at this stage. I could go back and I can try and reevaluate it, but that was not before Judge Bates below. He would have received a substantially higher sentence in the sense that he wouldn't have received any credit for the early acceptance of responsibility. He wouldn't have received the hope of the sentencing benefit that he wanted to receive as a result of this particular plea. They would have knocked out 50% of the restitution, and under this theory, at least, he would have gotten the Henrico conviction wrapped in as concurrent time. So that's why it's a little hard. I just feel like I don't know how to evaluate what the choice would have been. I'm sorry. No, I just don't know how we evaluate what a reasonable choice would have been without knowing what the alternative he was facing. Well, the only testimony from Mr. Miles was that if he did not accept this plea agreement, that Mr. Lass intended to supersede the indictment to reach the higher threshold level. The only evidence that we have is that the appellant would have faced a greater offense level if he was to include all the additional conduct, and that didn't include potentially outside this jurisdiction conduct. But we do know that the plea gave up this extremely powerful benefit, which is the possibility of a 30-month credit for time served. Well, we do not know that, Your Honor. In fact, I believe it's as a matter of law. But if he had gone to trial, let's play out Judge Millett's question, which I was wondering about as well. If he had gone to trial, he would have had an overwhelmingly strong argument that the Virginia conviction was for relevant conduct, and that would have knocked his criminal history category down from 5 to 3, and it would have made him eligible to argue this 5K point that I've already served 30 months for relevant conduct, I should get a credit. Those arguments were not pressed in the district court, and it was appellant's burden to frame that argument for Judge Bates. And so we are in somewhat of a disadvantage. Well, they did say that their best argument was the time served for the Virginia conviction. And they did frame it both in terms of the sentencing and the plea, giving up the 5K departure argument. I believe that, in fact, even counsel in some of his statements to the court and in his pleadings recognized that appellant wanted to plead guilty. Mr. Miles testified appellant wanted to plead guilty. He believed that he would have received the best benefit by taking this particular plea offer. But suppose we conclude that this was just objectively beyond the pale, the plea deal. I'm sorry? We can still assess. The lawyer's advice was take the deal. This is a good deal. It seems to me it was likely a terrible deal for him. When he pleads, he ends up at 33 to 41 months with the plea. Right. Right? He gets Category 5 on the assumption that the Virginia conviction is not relevant conduct, which I think it probably was. He gets, as you say, he gets three points. If you adjust him back to Category 3 and adjust for the three points for acceptance of responsibility, he ends up at 30 to 37, and he's able to argue for a 30-month credit for time served. I don't follow the criminal history category calculation because just based on the timing, the Virginia conviction occurred May of 2010. If the Virginia conviction were relevant conduct, it wouldn't have gone into the calculation of his criminal history. It wasn't. I mean, Your Honor's question presupposes a set of facts that was not presented to Judge Bates and was not elaborated in the trial court. The difficulty here was that we don't know. I don't understand what you mean by it wasn't presented. This is exactly their argument is that you can't say he was told it was a good plea when the advice was based on the lawyers not having done their homework. The only issue before Judge Bates was this issue of the statute of limitations defense in terms of the ineffectiveness. Appellant did not challenge Miles' advice with respect to taking the plea or not taking the plea because Appellant agreed that he committed these crimes and agreed that he, and based on both counsel's evaluation, the evidence was overwhelming and he would have been found guilty at trial. Right. So the whole calculation is managing the sentence. Yes. And by taking the plea, he gives up his ability to present a seemingly compelling argument that my sentence should be knocked down by 30 months because I've served time on this related conviction. Appellant's argument was that not that he wouldn't have pled guilty, but that Mr. Miles should have requested a carve-out for 5K. There's no evidence in the record that that was even a possibility. Right. There was testimony, I think, credited by the court that the government's offer was take or leave. So I'll give you that and frame it in terms of what would have happened if not getting the carve-out he had gone to trial and argued that the Virginia conviction is relevant conduct, it shouldn't be counted for criminal history, and he should get a 30-month credit. But that's looking in isolation with just respect to the Virginia conduct. There was testimony. Appellant's assessing where he ended up under the plea versus where he would have ended up had he gone to trial, taken a certain guilty verdict, and tried to argue for a lower sentence by arguing relevant conduct on the other conviction. If we open up the relevant conduct to the Virginia conviction, we also open up relevant conduct to every other jurisdiction where appellant committed fraud. Appellant had been committing the same type of fraud since 1999. By that token, then if all of the relevant conduct would have come in, and we don't have that evidence in the record. He was at about 106,000. The Virginia conviction would have maybe put him at 107,000. He would have been over the 120,000 threshold if AUSA last had obtained a superseding indictment. Maybe. That's the evidence that's in the record, but based on Mr. Miles, who reviewed the materials that was provided in discovery. If he goes over 120, the way I've calculated what happens if he goes to trial, he ends up at 37 to 46, and then he can argue for a 30-month credit for time served. But again, these were not – this was – we don't even have a complete record of what other relevant conduct, and this is presupposing. Well, I think part of your argument, it sounds like, is who the burden is on to develop this kind of argument. Appellants. But I am interested to know, what's the alternate world? Because in order to understand, I think you would agree that as a conceptual matter, if somebody has a plea agreement that has a certain set of circumstances in it, and then it turns out going to trial actually would be advantageous if you look at the sentences and the person is not counseled about that, that's ineffective assistance of counsel. There's no disagreement about that. It can be ineffective assistance of counsel to say, take this plea deal. It's good for you. And then it turns out, actually, had you gone to trial because of the way relevant conduct interrelates, you would have gotten a better sentence. That has to be ineffective assistance of counsel. There was actually no finding that there was – I'm just asking you as a conceptual matter. Just without talking about this case, I'm just saying just conceptually, it seems like it has to be possible that it can be ineffective assistance of counsel to tell a client, take a plea deal, and then it turns out if you had gone to trial and you certainly would have been convicted, the sentence you would have gotten still would be better than what you get by taking the plea deal. If it's in that simplistic term, I think that's probably correct. However, I don't believe you can reduce this particular case to that simplicity. So that's the question. So then it all turns on what the alternate scenario is, because we know what the scenario is with the plea deal. And then the question becomes, what's the alternate world? And it was appellant's burden to introduce that evidence and demonstrate that Your Honor's characterization of the possible hypothetical result from a trial would have been more beneficial. Appellant did not present that evidence in the trial court and has not made this particular argument at all in his brief, in his opening brief, or even in his reply brief. This is being brought up for the first time in the argument. I'm not sure that's fair. One of the principal arguments he's making is that what was given up that was so damaging was the ability to argue directly for the 30-month credit. In the context of the sentencing, a carve-out for the plea, appellant has made statements that he was eager to accept a plea agreement. And I think that that's not just the argument. It's also the probation office should have, when he talked to the probation office, they should have come in with a lower criminal history category to begin with. But he dropped the ball even before he got into the courtroom. But under the definition of the plea agreement clearly allows that. Under the definition of relevant conduct for 5K 2.23 to apply, it would have had to have been a relevant conduct in the offense-level calculation. And it wasn't. It wasn't included in the offense-level calculation. But why wasn't it relevant conduct? It's the same time. It's the same MO. It's the same credit card or debit card. It is a different jurisdiction. It is a different victim. It is an airline. A single transaction between New York. But you had your transportation in this case. You had a limousine. So the fact that he used it not just the use of the car. And a rental car company. Right. But my point is Virginia had the fact that you committed a crime. You had Virginia in this indictment because you had the Marriott and Key Bridge. Correct. So it's not a different jurisdiction. That's one of the jurisdictions included. This case involved the D.C. metropolitan area. That one involved California transactions that occurred in Virginia. In Henrico, Virginia. Involving California, New York. California 95 makes it not relevant. I mean you could have argued that at the time. But I would assume a prosecutor looking at that and deciding do I want to fight that or do I want to change my plea. Might have been thinking that they're not going to be able to sell that too well to the judge. I think you're right that we could have had this argument at the time. I think that the problem is this wasn't teed up in that way. Because it was other jurisdictions, multiple other jurisdictions, that appellant convicted crime. The pretrial services report when it referred to appellants in New York conviction from 2000, there was evidence of hundreds of thousands of dollars of loss. We don't know what the loss amount was from the other jurisdictions that would all have been brought in. Is there anything? So there's some indication of that issue in the pre-sentence report. And I guess maybe I can't go into details in open court. But that's the only place where I found it. The other thing I found bearing on this issue was the first lawyer testified. He got a bunch of discovery from the government including offenses that were neither the indicted ones nor the relevant conduct ones in the plea stipulation. And he said to himself there's a lot of stuff here and the benefit of this plea is unmanaging loss amount. There's stuff from New York, there's stuff from L.A., there may be stuff from Miami. Is there any indication what the magnitude of that was? Are we talking thousands, tens of thousands, hundreds of thousands? Because that makes a big difference. You're right, Your Honor. That evidence was not introduced because appellant never made this particular argument in the district court. Is it in the record? It is not in the record. The records were not introduced in the district court. The discovery? No, appellant did not put in all of the discovery. Appellant subpoenaed records in addition to the discovery but chose to put a particular argument before Judge Bates. He did not make the argument that Your Honors are pressing now. And, in fact, when he stood up today, he was focusing on the sentencing and the restitution issue because that essentially was conceded that appellant wanted to plead guilty. He wanted the potential advantage from this particular plea agreement. He was hoping to receive a benefit. You have to be very careful in making that argument. He may have wanted to plead guilty, but you can't say that he wanted to agree to this if his judgment wasn't informed by counsel that had done their homework. That's my concern with your argument. We don't know that he wanted to plead to this, notwithstanding what he would have wanted to plead to this if counsel, collectively, Miles and Carroll, had told him what he would face if he went to trial. Appellant did not raise this particular argument in the district court, and it was his burden at this stage in the 2255. In addition, appellant wanted the potential benefit of a sentencing that was available to him as part of this particular plea agreement. Can you give me a plausible scenario under which he would have gone to trial and gotten a sentence higher than the 33 months that he got, or a range higher? If, for instance, an appellant was known to use hotels in New York, in California, and Miami, and at least, as I referred to the pretrial services report, there was $200,000 of loss associated. In addition, was all that within the statute of limitations? The statute of limitations would have been irrelevant for purposes of relevant conduct for the guidelines calculation. This Court's opinion in Wyshynewski has already resolved that issue. I'm talking about what's a – he would not have been able to be convicted on those. No, he wouldn't have been convicted on the New York, but it would have been included in relevant conduct, and it would have – the entire breadth of that amount would have been calculated and added to the loss amount that appellant is so eager to reduce in terms of restitution. So appellant would have exposed himself to a higher dollar amount of restitution had he risked going to trial. This way, he was reduced in the universe of victims. I mean, counsel would have also pushed back on the statute of limitations issues and the amount, and we don't know how that all would have shook out before our judge in sentencing. Well, this Court has resolved the issue of the statute of limitations for relevant conduct purposes, and there would have been – certainly, his trial counsel would have had to – But the mandatory victim restitution act? I think trial counsel would have had to weigh that as a risk at the time as opposed to – Because it's 50 percent of the restitution here. A hindsight calculation. I don't know that Mr. Miles wanted to take that risk. By the way, you don't dispute – you haven't raised your argument in this case that he can't bring a restitution challenge under 2255, right? I didn't see that in your brief. No, we have made the argument appellant waived that – essentially abandoned that claim because he has not established it. It certainly is not clear and undisputed. No, but you haven't said that it's not cognizable under 2255. We have not made that particular argument. We have argued that appellant – one, it's not clear and undisputed. Two, appellant did not introduce any evidence in the district court that is supporting his claims of challenge with respect to these particular – he did not bring in any witness to testify. As to the statute of limitations, are you talking about the ones that were paid, that he says were paid? That he says were paid. Okay. But statute of limitations, we don't need – No, right. This scheme involved payment, initial payment that was reversed after the fact. So can I just ask you to elaborate a little bit? You were just talking about the alternate world. And the alternate world, I know we're asking you to reconstruct it even though your argument would be that that's not my burden to do. But just to play it out, the main point you've made so far is that the alternate world, you have to take into account other relevant conduct that could be considered. And that other relevant conduct could have bumped up the amount such that it wouldn't be disadvantageous. Is there any other category that you can point to as obvious things that – In addition, appellant – although appellant denied this was a conspiracy, each of his – many of his crimes involved other people that he was involved with. And there was evidence that would have supported that. So he had a leader – would have had a leader in addition – additional offense level. But a conviction – conviction on a conspiracy to commit wire fraud would not increase his sentencing exposure relative to conviction on the underlying wire fraud. It would have – it would be a leader – I mean, there are 27 acts in the plea specification. My understanding of the guidelines is it doesn't matter – would have been the same if he had been convicted on the substantive counts  that are key to amount of loss. I'm sorry if I wasn't clear. My point was that he was a leader of a conspiracy. He would have had an additional offense level increase as a result of that. Is there anything in the record that he led anybody? I'm sorry? Is there anything in the record that he was leading anybody? There was evidence that, according to Mr. Miles, AOSA last had agreed as part of their plea negotiation not to seek a leader. So that was definitely on the table. It never came up, right? Because it's something that could have come up, but it actually didn't come up. It did not. And, again, it was appellant's burden to say that he wasn't. And appellant, despite his denial that this wasn't a conspiracy, there was evidence that somebody else had to be the person. If he's at the desk and somebody else is making the phone call with the false access code, by definition, somebody else was involved. What's leader plus 2? I'm sorry? What's the adjustment for leader? I believe it's plus 2. It depends on the number, and I think that is something we don't know, again, because appellant did not raise this argument in the district court, and therefore we do not have a complete record in order for this court to resolve it based on a plea that never happened. When you say this argument, you're saying he didn't raise the argument that the sentence would have been not materially higher had he gone to trial? Yes. Appellant did not introduce any evidence to make the argument that he stood to benefit. He introduced one side of it to say that if you just look at JetBlue, then you could just isolate that point, that it was relevant conduct. But his argument ignores the fact that when it wasn't included in the offense calculation under 5K2.23, it could not have been used. To the extent the government, part of its arguments were that, hey, this was a good deal, right? Anyhow, this was a good deal, and it wouldn't have gotten any better. Why wasn't it part of the government's burden to show how bad it would have gotten to have that argument? Well, it was not the government's burden to present evidence to support its argument. Discount this argument that was not framed for the district court. No, no, but you clearly were arguing. Your argument was we were not going to give you anything better, and this was the wise thing to take. That was clearly litigated below, and I don't, as to both sides, I give you as to both sides, I don't understand how you could make that, the government could make that argument without having any, how could you responsibly make that argument without having any idea what he would have faced had he pressed all these issues, lost his good cooperation credit, or what is it, acknowledgment of responsibility credit. We don't, no one knows. I think that what the government did was respond with, had Mr. Miles rejected this plea offer, it would have opened up the world of other relevant conduct. It did not, it was not, because it was not framed by appellant in this challenge, this specific challenge in the way that your honors are focusing, it was not elaborated on in the district court. It's also a representation, as I recall, that there wasn't going to be any other plea offer, and it just seems to me, I don't know why the government would come to that position unless it had some sense of what was facing, what it would be hitting him with otherwise. If it was going to get all the trouble of a trial, they better get some bang for their money, right? So they must have had a sense of what he would face at trial. I'm sure, unfortunately, it wasn't AUSA last who handled the hearing. He had left the office by that time. And so we don't have, he wasn't called by appellant. And, again, although appellant keeps trying to shift the burden to the government, it was his burden to introduce the possibility of any alternative plea. And, again, appellant, how do people prove that? I've just always been curious is how can they prove an alternative plea? Because, of course, the government at this stage is going to say, no, no, that was our best offer. They've got every incentive to say that. And I don't know how they're supposed to get in the mind of folks, other than to say because I would have shown you I was only facing X, Y, or Z. Maybe that's the point. I think when this Court, when I went back and re-read Newman this morning about the appellant's burden of what he's going to have to show, that there was an alternative available, doesn't discuss how appellant has to prove it. But it is squarely on appellant's shoulders to prove it. No, I get that. I'm just asking you and your experience. He could have. U.S. Attorney's Office, has anyone ever successfully shown that? Or how do they do it? I haven't had that experience, and I can only speak from my personal experience, Your Honor. I don't know that appellant couldn't have called AUSA last. He is in the jurisdiction, even though he had left the office. He could have made that effort. He didn't make that effort to show that there was any alternative available, just that they speculate that a different potential plea was potentially available. And that's simply insufficient under Newman. I would also note, Your Honor, just in closing, that appellant's arguments rest on a mischaracterization of Miles' testimony. Mr. Miles did not testify that he intended to make a 5K argument. In fact, the questioning that appellant cites in the transcript was that he had intended to make any variance argument at sentencing. He never testified that he intended to make this particular argument of 5K because he did not make a determination that the Virginia case would be a relevant case under that section. And he also recognized that he couldn't make a 5K 2.23 variance argument because of the terms of the plea agreement.  Thank you, Your Honors. I guess on the last point I would disagree. It's true he didn't say he was going to raise a departure argument. He did say he was going to raise a variance argument on the same grounds. And I think that the record is fairly clear on that. I just want to make three quick points. I appreciate the Court indulging me. First, just to reiterate, I think any higher offense level he faced would have been offset by the lower criminal history score he would have gotten. Plus, of course, then on top of that he could have argued for the 31 months credit. Second point is simply to look at what the lawyer argued here, Mr. Carroll. Quote, he's a thief but not a very good thief. That's his argument. He's a thief but not a very good thief. That's his sentencing argument. Really? This is more than him arguing something soft. This was a schizophrenic argument. He was arguing below guidelines and within guidelines at the same time. It was insincere and it came across as insincere because it was internally inconsistent. And he didn't know all the key facts. He didn't know it was the same debit card. He admitted that. And he didn't know that victims had been paid and were getting ordered restitution. So I think the deficiency is obvious. And the bottom line I would conclude by saying even Judge Bates in ruling against us said this was a close call on counsel. Please look at the government's brief at pages 12 and 13 where it lays out Judge Bates' rationale for his sentencing. What he says is he mentions nothing in his mitigating factors about how he had served time on a related or similar Virginia sentence. He mentions nothing. That's not even listed as a mitigating factor. Why? Because it wasn't raised as a mitigating factor below the sentence. And then on page 13, he concludes by saying that his sentence is consistent with what is being given to similarly situated people. That's not so. 5K2.23 says that similarly situated people would have gotten the credit. Let Judge Bates issue a sentence that takes all the facts into account, including the ones that should have been brought to him. Please remand with directions that he evaluate prejudice. Can I ask one quick question in that regard? I don't know. Assuming, I'm not suggesting, but assuming if there were to be a determination that, say, that issue, we needed to have a hearing on that issue, like a remand and a hearing on that issue, I don't know if any of this could all be done with respect to the government's rights in time before he's released. Is there any collateral value to this or is this really, as the sentence itself, does it only matter if it's accomplished before the release date? The only way that he would not face prejudice is if you granted him bail, I suppose, while this is being evaluated and a decision is being reached. But I think the sense is that interrupting a sentence is typically not generally considered a good thing. We would need to get relief. It would need to get remanded, and Judge Bates would then need to hold a prompt hearing. And then, look, if he finds no prejudice, he'll serve the rest of the sentence. If he does find prejudice, though, if there's deficiency, he can grant relief, and whatever relief he thinks is fair, consistent with the guidelines. That's all we're asking. Thank you. Thank you, counsel. Can we assume that both counsel will keep us updated on his release date? Yes, Your Honor. I'd be happy to. Thank you. Mr. Smith, you were appointed by the court to represent the appellant in this case, and the court appreciates your assistance. Thank you.
judges: Srinivasan, Millett, Katsas